UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
STACEY DRUSS,

                    Plaintiff,

v.

ANTHONY MUSCATELLA, et al.,

                    Defendants.
--------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

20-CV-06341 (PMH)

PHILIP M. HALPERN, United States District Judge:

Stacey Druss ("Plaintiff") brings this action against Clarkstown Police Officers Anthony Muscatella ("Muscatella"), Victor Protasiewicz ("Protasiewicz"), Shirley Rose ("Rose"), and Christian Cortelli ("Cortelli," and collectively, "Defendants"), asserting claims under 42 U.S.C. § 1983 and state law for false arrest, unlawful entry, conspiracy, false imprisonment, due process, assault and battery, and trespass, arising out of her arrest and subsequent hospitalization under the New York State Mental Hygiene Law ("MHL"). (Doc. 10, "AC").[1]

Pending presently before the Court is Defendants' motion for summary judgment seeking dismissal of the Amended Complaint under Federal Rule of Civil Procedure 56. (Doc. 37; Doc. 38; Doc. 39, "Defs. Br."). Plaintiff opposed Defendants' motion (Doc. 42; Doc. 42-1, "Pl. Br.") and the motion was fully submitted with the filing of the motion, opposition, and Defendants' reply brief on December 11, 2021 (Doc. 42, "Reply").[2]

---

[1] Plaintiff broadly asserts her claims under the headers "Federal Causes of Action" (AC ¶¶ 47-51) and "State Causes of Action" (*id*. ¶¶ 52-55), without specifying and identifying what claims she asserts by number, header, or otherwise. Defendants discerned the foregoing list of her claims for relief, with which Plaintiff appears to agree. As such, and in accordance with the Court's own independent review, the Court accepts that these are all of the claims comprising Plaintiff's Amended Complaint.

[2] The parties attempted to file their motion papers on November 12, 2021, but due to a technical deficiency, the Clerk's Office rejected that filing. The motion papers were re-filed properly on December 11, 2021.

For the reasons set forth below, Defendants' motion is GRANTED IN PART.

## BACKGROUND

On July 22, 2019, Plaintiff's sister, Jodi Druss ("Jodi"), who resides in Florida, called the Rockland County Behavioral Response Team ("BHRT") requesting a wellness check for Plaintiff. (Doc. 27-2, "56.1 Stmt." ¶¶ 12-13). Specifically, Jodi advised BHRT that she had received multiple reports from Plaintiff's "peers and ex-husband" that Plaintiff was experiencing a manic bipolar episode, not sleeping or eating, and exhibiting erratic behaviors and grandiose delusional thinking. (Doc. 38, "Loomba Decl.," Ex. B; *id*. Ex. F at 00:10-00:20).[3] BHRT contacted the Clarkstown Police Department ("CPD") requesting that they conduct a "well-check" of Plaintiff and, if needed, for the police to call BHRT. (*Id*., Ex. F at 00:20-00:24). When asked by CPD if Plaintiff was on medication, BHRT stated they believed that Plaintiff was "off" her medication because "if she's acting this crazy, I doubt she is [taking her medication]." (*Id*., Ex. F at 02:42-02:54). BHRT reported that Plaintiff was not known to be violent and did not have any weapons. (*Id*., Ex. F at 02:22-02:40).

CPD requested, by radio dispatch, that Muscatella and Rose respond to Plaintiff's residence to conduct a welfare check, relaying what BHRT had reported to CPD. (*Id*., Ex. G at 00:16-01:06). Specifically, CPD conveyed to the officers that BHRT had received a call from Plaintiff's sister advising that she believed Plaintiff was having a bipolar episode, acting irrational, not making sense, and may be off her medication. (*Id*.). CPD further informed the officers that Plaintiff had no known violent history and no weapons. (*Id*.).

---

[3] A CD was provided to the Court containing three recordings identified as Exhibits F, G, and H to Defendants' motion. Exhibit F is a recording of a telephone call from BHRT to CPD; Exhibit G is a recording of a radio dispatch from CPD to Muscatella and Rose on the date of the subject incident; and Exhibit H is a recording of a telephone call between Plaintiff and another member of CPD, Sergeant Fredericks. (Loomba Decl. ¶¶ 8-10).

Defendants contend that when Muscatella and Rose arrived at Plaintiff's residence, they observed garbage pails and bags scattered around the driveway, recycling strewn about the lawn, and napkins, paper bags, packets of condiments, and Chinese food on the front steps. (*Id*, Ex. E, "Muscatella Tr." at 15:22-16:4). Plaintiff's friend, Stephen Mitchell, who observed the officers at Plaintiff's residence, did not see overturned garbage pails, garbage bags, or stray garbage littered around the property. (Doc. 42, "Giordano Decl.," Ex. J, "Mitchell Decl." ¶ 3). Plaintiff disputes that napkins, bags, packets of condiments, and Chinese food were on the outside steps of her home. (Loomba Decl., Ex. D, "Pl. 50-h Tr." at 54:9-55:16). Rather, Plaintiff explained that she and her son had a fight earlier in the evening, and that as he stormed out of the house, he kicked, threw, and/or knocked over a Chinese food box containing packets of duck sauce, mustard, and soy sauce inside her home on the staircase landing. (*Id*. at 54:25-55:16; Loomba Decl., Ex. A, "Pl. Tr." at 62:22-63:5, 136:10-139:23). She left the condiments on the staircase landing because she intended to direct her son to pick them up when he returned home. (*Id*. at 138:7-139:23).

Muscatella approached Plaintiff's door and attempted to speak with Plaintiff. (56.1 Stmt. ¶ 17). It was then 10:00 p.m., and Plaintiff contends that she was sitting on her couch working on an essay when she heard the knock at her door. (Pl. 50-h Tr. at 48:6-51:10). Upon seeing police at her door, Plaintiff asked whether they had a warrant, and when they replied "no," she asked them to leave her property. (*Id*. at 56:19-57:12; Loomba Decl., Ex. C, "Rose Tr." at 28:22-29:5; Muscatella Tr. at 18:9-15). Plaintiff asked the police multiple times to leave her property after assuring them that she was fine, but they refused to leave and, instead, more officers arrived. (Pl. 50-h Tr. at 57:19-58:4). Muscatella testified that as he tried to get Plaintiff to open the door, she aggressively ran up and down the stairs twice, ducked behind a cardboard box, and threw various

condiments and an egg roll at the door as if "launching a grenade." (Muscatella Tr. at 48:2-11, 55:12-19). Plaintiff denied ever throwing leftover Chinese food at her door. (Pl. Tr. at 170:20-24).

At some point while Defendants were outside Plaintiff's front door, she received a phone call from CPD Sergeant Fredericks ("Fredericks"), who advised Plaintiff that officers were there to make sure that she was okay. (56.1 Stmt. ¶ 20). Plaintiff stated to Fredericks that, *inter alia*, she was filming a show, "the Master Teacher," and because she and Fredericks had established trust, she would open the door for the police officers outside. (Loomba Decl., Ex. H at 02:07-02:19). As Plaintiff advised Fredericks that she was opening the door, an audible clang of a metal object can be heard in the recording—which Plaintiff testified was a metal rod that the officers had shoved in her door—and Plaintiff advised Fredericks that the officers were pushing her door open. (*Id*. at 02:19-02:30; Pl. 50-h Tr. at 59:14-15, 89:25-91:13; Pl. Tr. 162:10-163:2; *see also* Rose Tr. at 49:25-50:9 (testifying that she heard a metallic item fall to the ground once the door was opened but did not recall what it was)).

Muscatella testified that he and Cortelli entered Plaintiff's home, and he observed Chinese food packets and the egg roll she had thrown at him; that she was wearing a t-shirt and no pants; and that she was waving her hands and acting erratically, leading him to believe that Plaintiff was having a manic episode. (56.1 Stmt. ¶ 18). Plaintiff denies that she spoke or acted erratically; that she was in a "fine" mood; and that she was wearing was an oversized concert t-shirt that fell to her upper thigh without pants because it was nighttime. (Pl. 50-h Tr. at 50:10-51:10, 52:22-23).

Defendants maintain that upon entering Plaintiff's home, before Muscatella could speak with Plaintiff, she picked up a mustard packet and smacked him across the face with it, stating, "[T]his is for you, you're lucky you didn't die." (Muscatella Tr. at 50:9-51:7). Plaintiff maintains that when the police entered her home, she was caused to stumble backwards, stepping on a packet

of soy sauce. (Pl. Tr. at 59:14-17, 169:3-7; Pl. 50-h Tr. at 95:19-23). She then bent down and wiped her foot, and when she stood up the officers pulled her hand behind her back to handcuff her. (Pl. 50-h Tr. at 59:17-21, 89:18-24; 94:5-23). Audible on the recording at that point in the series of events is Plaintiff saying the word "step," and the phrases "here, this is for you," and "you're lucky you didn't die." (Loomba Decl., Ex. H at 02:56-03:01). Plaintiff was then handcuffed, arrested under MHL § 9.41 and transported without pants in Muscatella's police car to Nyack Hospital. (56.1 Stmt. ¶ 26; Pl. 50-h Tr. 108:5-10). Plaintiff was taken to the emergency room and had no further interaction with any members of CPD. (56.1 Stmt. ¶ 30)  Plaintiff was then transferred to the behavioral health unit at Nyack Hospital and discharged three days later. (*Id*. ¶ 31). Plaintiff never observed any CPD officer give paperwork or provide instructions to, or otherwise communicate with, any Nyack Hospital staff member. (*Id*. ¶ 33).

Defendants now move for summary judgment dismissing the Amended Complaint.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve

disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 Fed. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 Fed. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material

fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 Fed. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

Plaintiff asserts four claims for relief under 42 U.S.C. § 1983 (i.e., false arrest, unlawful entry, conspiracy, false imprisonment, and due process) and three claims for relief under state law (i.e., false arrest, assault and battery, and trespass). As framed by Defendants, a number of these claims for relief rise and fall on the existence of their defenses of probable cause or arguable probable cause and qualified immunity and can be grouped accordingly. The Court therefore first addresses those claims and the arguments advanced thereto by Defendants.

I.   <u>False Arrest Under Federal and State Law, Assault and Battery, and Trespass</u>

A plaintiff is required to show, for § 1983 claims of unconstitutional false arrest in New York, that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). False arrest claims brought under § 1983 are substantially the same as those brought under the state law. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). Probable cause "is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). "Probable cause to arrest . . . exists when the officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Wierzbic v. Howard*, 836 Fed. App'x 31, 34-35 (2d Cir. 2020) (internal quotation marks omitted). This standard is an objective one and evaluates "the

reasonable conclusion to be drawn from the facts known to the officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). This standard requires that a court consider "the totality of the circumstances and . . . be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted).

It is well-settled that hearsay can be used to "establish probable cause." *Hamilton v. City of New York*, No. 15-CV-04574, 2019 WL 1452013, at *11 (E.D.N.Y. Mar. 19, 2019) (quoting *United States v. Parcel of Prop.*, 337 F.3d 225, 236 (2d Cir. 2003)). If there is reason to doubt a witness's credibility, corroborating evidence can support probable cause. *See Toussaint v. Cnty. of Westchester*, No. 21-CV-03817, 2022 WL 2834108, at *5 (S.D.N.Y. July 20, 2022); *Brodie v. Fuhrman*, No. 07-CV-04212, 2010 WL 1189347, at *5-6 (E.D.N.Y. Mar. 29, 2010). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ." *Weyant*, 101 F.3d at 852.

A police officer "may take into custody [and remove to a hospital] any person who appears to be mentally ill and is conducting . . . herself in a manner which is likely to result in serious harm to the person or others." MHL § 9.41. "Likely to result in serious harm" is defined as:

> (a) a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or (b) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

*Id.* § 9.01. "In assessing whether an officer had probable cause to arrest a person under this statute, courts apply the same objective reasonableness standard that governs Fourth Amendment claims."

*Arroyo v. City of New York*, No. 14-CV-09953, 2016 WL 8677162, at *3 (S.D.N.Y. July 8, 2016), *aff'd*, 683 Fed. App'x 73 (2d Cir. 2017).

In the absence of probable cause, an arresting officer is still entitled to qualified immunity if he can establish that there was "arguable probable cause" to arrest. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id*. (quoting *Golino*, 950 F.2d at 870). "Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause[, and] 'arguable probable cause' will suffice to confer qualified immunity for the arrest." *Id*.

The Second Circuit has held that an officer is protected by qualified immunity, and summary judgment on a false arrest claim is appropriate, if "a rational jury could *not* find that the officers' judgment was so flawed that no reasonable officer would have made a similar choice." *Rine v. Giardina*, 199 F.3d 1323 (2d Cir. 1999) (quoting *Lennon v. Miller*, 66 F.3d 416, 424-25 (2d Cir. 1995) (emphasis in original)). "[T]o determine whether a mental-health seizure is justified by arguable probable cause, a court must review the specific observations and information available to the officers at the time of a seizure." *Myers v. Patterson*, 819 F.3d 625, 633 (2d Cir. 2016). "A person may be annoyed, uncooperative, and irrational without presenting a danger to herself or of violence to others." *Id.* at 634.

Defendants argue that Plaintiff's false imprisonment claims must fail because there was probable cause to seize Plaintiff pursuant to MHL § 9.41, or at the very least, Defendants were entitled to qualified immunity because they had arguable probable cause to detain her. Notwithstanding Defendants' position, Plaintiff's false imprisonment claims survive the motion

for summary judgment as there are clearly disputed issues of material fact. Specifically, the "pertinent events" leading up to Plaintiff's arrest under MHL § 9.41 are disputed and summary judgment, therefore, would be inappropriate. *Brock v. City of New York*, No. 15-CV-01832, 2018 WL 3579099, at *7-8 (S.D.N.Y. July 25, 2018); *see also Kerman v. City of New York*, 261 F.3d 229, 241 (2d Cir. 2001) (reversing summary judgment on qualified immunity grounds pursuant to MHL § 9.41 because of the parties' disputed accounts of the events leading to plaintiff's arrest); *Quon v. City of New York*, No. 14-CV-09909, 2016 WL 4411416, at *4-5 (S.D.N.Y. Aug. 18, 2016) (denying summary judgment due to the parties' "significantly different accounts of [p]laintiff's arrest" and holding that "a jury must determine what transpired between the officers and [p]laintiff before the Court can make a determination as to qualified immunity").

Indeed, the parties appear to agree only that: (1) the officers arrived at Plaintiff's residence to conduct a welfare check; and (2) the information provided to Muscatella and Rose by CPD, and to CPD by BHRT, indicated that Plaintiff had no known violent history and no weapons. Otherwise, the accounts of the circumstances and events culminating in Plaintiff's detention are dramatically and diametrically opposed.

Defendants maintain that Plaintiff was conducting herself in a manner likely to result in serious harm to herself or others, justifying her arrest under MHL § 9.41, based upon a variety of observations. First, when Muscatella and Rose arrived at Plaintiff's residence, they observed the property in disarray—a mess of garbage pails, trash, and bags scattered on Plaintiff's driveway, and napkins, paper bags, packets of condiments, and Chinese food on the front steps of Plaintiff's house. Second, when officers knocked on Plaintiff's door and she answered, they observed that she was not fully clothed, was acting erratically and waving her hands, aggressively ran up and down the stairs, ducked behind a cardboard box, and threw various condiments and an egg roll at

the door as if it were a hand grenade. Third, Defendants observed that Plaintiff was speaking irrationally and out of context, stating, "I'm the master teacher, you're the master learner." (Muscatella Tr. at 25:16-18). Finally, when Plaintiff opened her door, Defendants contend that she slapped Muscatella across the face with a packet of mustard and said, "[T]his is for you, you're lucky you didn't die." (*Id*. at 50:9-51:7).

Plaintiff sharply disputes Defendants' account.

Plaintiff submits on this motion the affidavit of her friend who denied seeing garbage pails overturned or garbage bags or garbage strewn around the property on the night in question. Plaintiff disputes that there was any Chinese food byproduct on the steps outside her home. She maintains that she was not fully clothed when officers knocked on her door because it was then 10:00 p.m., she was sitting on her couch working on an essay, and was wearing an oversized concert t-shirt (like pajamas). Plaintiff denies that she spoke or acted erratically. She denies ever throwing leftover Chinese food at her door. Plaintiff avers that officers shoved a metal rod in her door to push their way in, causing her to stumble backwards, stepping on a packet of soy sauce. Finally, she insists that she did not slap Muscatella.

Given the clear dispute as to what Defendants knew and/or observed at the time of Plaintiff's detention, a jury should decide what transpired between the officers and Plaintiff—only then, after those facts are found, can the existence of probable cause (or arguable probable cause) to seize Plaintiff under MHL § 9.41 be determined. *See Kerman*, 261 F.3d at 241; *Brock*, 2018 WL 3579099, at *8. Accordingly, Defendants' motion for summary judgment is denied with respect to Plaintiff's false imprisonment claims under federal and state law.

Because Defendants' arguments as to Plaintiff's claims of assault and battery and trespass likewise hinge on the existence of probable cause or arguable probable cause (*see* Defs. Br. at 18;

11

Reply at 10), the disputed issues of fact described *supra* preclude the Court from granting summary judgment in their favor.[4]  Plaintiff's state law claims of assault and battery and trespass, therefore, likewise survive summary judgment.

## II.  Unlawful Entry

Defendants argue that Plaintiff's unlawful entry claim fails for reasons similar to her false arrest claims: "[b]ased on the information provided to the police and their direct observations at the scene, there was probable cause to believe that entering the home was authorized under the law and, alternatively, the officers are entitled to qualified immunity on that claim." (Defs. Br. at 2, 11-14; *see also* Reply 6-7). Specifically, Defendants contend that the emergency aid doctrine or MHL § 9.41 provide an exception to the Fourth Amendment's prohibition on warrantless entries, and such circumstances were indisputably present here.

"Warrantless entry into a home is presumptively unreasonable. Nevertheless, 'warrant requirements must yield when exigent circumstances demand that police act speedily.'" *United States v. Lavan*, 10 F. Supp. 2d 377, 382 (S.D.N.Y. 1998) (quoting *United States v. Fields*, 113 F.3d 313, 323 (2d Cir. 1997)). If, at the moment of entry, the facts were such that "would lead a reasonable, experienced officer to believe there was an urgent need to render aid or take action," the exigent circumstances exception would apply. *United States v. Simmons*, 661 F.3d 151, 157

---

[4] With respect to Defendants' additional argument that the battery claim also fails because the record lacks evidence of serious physical injury, "[t]he Court recognizes that a plaintiff who suffers only *de minimis* injuries may not be able to survive summary judgment on an excessive force claim; however 'the Second [C]ircuit has indicated that a very minimal injury is sufficient to trigger potential liability' for excessive force." *Crews v. Cnty. of Nassau*, 996 F. Supp. 2d 186, 212 (E.D.N.Y. 2014) (quoting *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009)), recognizing that the essential elements of § 1983 excessive force and state law assault and battery claims are substantially identical)). Plaintiff testified that, as a result of the handcuffing, her wrists, shoulder, and back hurt, and that her wrists were scraped, red, and swollen. (Pl. 50-h Tr. at 105:11-106:16, 121:25-123:2). She also testified that one officer "threw" her to another officer and "pushed" her across her lawn. (*Id*. at 59:20-60:2). Viewing the facts in the light most favorable to Plaintiff and resolving factual ambiguities in her favor, Plaintiff's testimony raises material issues of fact not addressed by Defendants' additional argument concerning Plaintiff's battery claim.

(2d Cir. 2011).  But for the same reasons described *supra*, disputed issues of fact prevent the Court from determining as a matter of law that Defendants were authorized and/or justified in their entry. Accordingly, summary judgment is denied as to Plaintiff's claim of unlawful entry.

III.   Conspiracy

Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine, as each Defendant worked for the same corporate entity (i.e., CPD) and was acting within the scope of their employment in connection with the alleged conduct. *See Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *10 (S.D.N.Y. Nov. 19, 2021) ("State officials carrying out an agency's business cannot conspire with one another as a matter of law under § 1983." (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1977))); *Pajazetovic v. City of Utica, N.Y.*, No. 18-CV-01496, 2021 WL 4440473, at *11 (N.D.N.Y. Sept. 27, 2021) ("Courts in the Second Circuit recognize the 'intracorporate conspiracy doctrine,' which holds that the 'officers, agents, and employees of a single corporate entity are legally incapable of conspiring together.'" (quoting *Peck v. Cty. of Onondaga, N.Y.*, No. 21-CV-00651, 2021 WL 3710546, at *15 (N.D.N.Y. Aug. 20, 2021))); *Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) ("Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together.").

An exception to the intracorporate conspiracy doctrine known as the "personal stakes" exception applies, however, when individuals are "pursuing personal interests wholly separate and apart from the entity." *Rizk v. City of New York*, 462 F. Supp. 3d 203, 225 (E.D.N.Y. 2020) (quoting *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015)). Plaintiff opposes this branch of Defendants' motion by invoking the personal stakes exception. (Pl. Opp. at 15 (quoting *Dilworth*

13

*v Goldberg*, 914 F. Supp. 2d 433, 466 (S.D.N.Y 2012)). She contends that Muscatella falsified

police documents to cover up Defendants' violation of her constitutional rights, identifying the

false reporting as Muscatella's police report which stated that she "picked up an open mustard

packet that she had thrown down the stairs, and with it in hand, struck [him] on the left side of

[his] face." (*Id.*). Missing from Plaintiff's argument is any indication, direct or circumstantial, of

a conspiracy among Defendants. In other words, even were the Court to accept that Muscatella's

report was false, that implicates Muscatella only—there is no evidence of the existence of an

agreement among the several officers to inflict an unconstitutional injury upon Plaintiff. Plaintiff's

conclusory statements in her opposition cannot defeat Defendants' motion. *Dinkins v. New York*,

No. 19-CV-08447, 2021 WL 3173968, at *9 (S.D.N.Y. July 26, 2021); *see also Sammarco v.

Hoolan*, No. 12-CV-07857, 2014 WL 3639161, at *2 (S.D.N.Y. July 23, 2014) ("Reliance upon

conclusory statements or mere allegations is not sufficient to defeat summary judgment." (quoting

*Woods v. Ruffino*, 8 Fed. App'x 41, 42 (2d Cir. 2001))).

　　　　Accordingly, the conspiracy claim against Defendants is barred by the intracorporate

conspiracy doctrine and Defendants' motion for summary judgment is granted as to that claim.

IV.　　<u>False Imprisonment</u>

　　　　As an initial matter, "[a]lthough plaintiff purports to assert false arrest and false

imprisonment as two independent causes of action . . . false arrest is considered a kind of false

imprisonment, and the claims are analyzed in identical fashion." *Mitchell v. Home*, 377 F. Supp.

2d 361, 371 (S.D.N.Y. 2005); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir.

1995) (describing false arrest claim as type of false imprisonment claim and stating that claims are

analyzed identically). Plaintiff, in her opposition, explains that this "false imprisonment" claim

proceeds under two theories: first, based upon the illegal entry into her home and seizure by

Defendants, which is identical to her false arrest claims; and second, based upon Defendants'
provision of "fictitious claims" to hospital personnel resulting in her detention in the psychiatric
unit. (Pl. Opp. at 16).

As to the first theory advanced by Plaintiff, Defendants argue the claim fails for the same
reasons they contended Plaintiff's false arrest and unlawful entry claims failed, to wit: the
existence of probable cause or arguable probable cause and qualified immunity. (Reply at 9). For
the same reasons described *supra* with respect to the false arrest and unlawful entry claims,
disputed issues of fact preclude the Court from granting Defendants' motion as to this theory of
liability on her false imprisonment claim.

As to the second theory advanced by Plaintiff, Defendants argue that because there is no
proof that any of the Defendants provided false information to the hospital, the claim fails.
Muscatella testified that when he brought Plaintiff to the hospital, he explained to hospital
personnel why she was there. (Muscatella Tr. at 40:21-41:8). Plaintiff proffered a page from her
hospital records that states: "There is a report of violent behavior (had hit PD)." (Doc. 42 at 4).
The portion of the hospital records submitted by Defendants states that Plaintiff "reportedly threw
food at the police and struck an officer." (Doc. 40-1 at 1). Because the question of whether the
information reported to the hospital was false is a disputed issue of fact, Plaintiff's false
imprisonment claim survives summary judgment.

V.   Due Process

Defendants argue that Plaintiff's due process claim fails because when another provision
of the Constitution provides an explicit textual source of constitutional protection, the Court must
assess Plaintiff's claims under that explicit provision and not the more generalized notion of
substantive due process. (Defs. Br. at 17 (citing *Southerland v. City of New York*, 680 F.3d 127,

15

142-43 (2d Cir. 2012))). Plaintiff, in opposition, did not address Defendants' argument or provide any case law or other authority to rebut the contention. Even if Plaintiff did not concede the issue by failing to respond to it, *see In re UBS AG Secs. Litig.*, No. 07-CV-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments by its opponent that it fails to address), it is axiomatic that Plaintiff's claim "must be analyzed under the standard appropriate to the Fourth Amendment, not under the rubric of substantive due process." *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (quotation marks and alterations omitted). Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's due process claim is granted.

VI.   Rose's Personal Involvement

Defendants move for summary judgment dismissing the action as alleged against Rose on the grounds that Plaintiff conceded that Rose had no direct role in detaining Plaintiff under the MHL. Plaintiff, in her opposition, argues only that Rose had a duty to intervene to prevent the constitutional violations perpetrated by her colleagues and that her failure to do so gives rise to her liability. (Pl. Opp. at 18). Plaintiff, however, did not plead a failure to intervene in the Amended Complaint, nor has she sought leave to interpose such a claim. "It is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment." *Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016) (citing *Avillan v. Donahoe*, 483 Fed. App'x 637, 639 (2d Cir. 2012) (holding that the district court did not err in disregarding allegations the plaintiff raised for the first time in response to the defendant's motion for summary judgment); *Shah v. Helen Hayes Hosp.*, 252 Fed. App'x 364, 366 (2d Cir. 2007) (holding that "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint")). Accordingly, because her sole opposition to Defendants' argument on

16

this branch of the motion is an attempt to raise a new claim not contained in her pleading, the motion to dismiss the action as to Rose is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART. Plaintiff's conspiracy and due process claims are dismissed. Plaintiff's claims against Rose are dismissed. Plaintiff's federal and state claims alleged against Muscatella, Protasiewicz, and Cortelli for false arrest, unlawful entry, false imprisonment, assault and battery, and trespass will proceed to trial.

The parties are directed to meet and confer and comply with the Court's Individual Practices (rev. May 2, 2022) Rules 6(A) and 6(B) by filing the documents required therein, which include a joint pretrial order, proposed joint *voir dire* questions, joint requests to charge, joint verdict form, and motions *in limine*, on or before October 28, 2022.

A pretrial conference has been scheduled for December 1, 2022 at 12:00 p.m. to be held in Courtroom 520 of the courthouse located at 300 Quarropas Street, White Plains, New York 10601.

The Clerk of Court is respectfully requested to terminate the pending motion (Doc. 37) and to terminate Shirley Rose as a Defendant herein.

Dated: White Plains, New York
      August 26, 2022

SO ORDERED:

_____
Philip M. Halpern
United States District Judge

17