

John M. Flannery
914.872.7111 (direct)
914.391.2673 (mobile)
annery@wilsonelser.c

> Plaintiff is directed to file a letter in response to defendants' letter (Doc. 63) by 12/27/2022.
>
> SO ORDERED.
>
> Philip M. Halpern
> United States District Judge
>
> Dated: White Plains, New York
> December 19, 2022

Hon. Philip M. Halpern
United States District Court for the Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re: Druss v. Anthony Muscatella, et al., Docket No. 20-CV-06341 (PMH)

Dear Judge Halpern:

We represent the defendants in this matter.

Immediately prior to the filing of the revised Joint Pre-Trial Order ("JPTO"), we were advised by plaintiff's counsel that he intends to call Dr. Ralph Shapiro as an expert witness in his case-in-chief. Given this untimely disclosure, the defendants were unable to submit a motion to preclude Dr. Shapiro's testimony prior to the November 27, 2022 deadline for all motions *in limine* in this case. The defendants noted an objection in the JPTO to Dr. Shapiro's testimony. The defendants now respectfully request that this Court issue an Order precluding Dr. Shapiro's testimony as: (1) the plaintiff's disclosure of this witness failed to comply with FRCP Rule 26(a); (2) the Report provided by Dr. Shapiro is wholly irrelevant to this case; and (3) the Report impermissibly relies on hearsay documents. A copy of Dr. Shapiro's report with attachments is annexed hereto as Exhibit "A".

The plaintiff's disclosure of Dr. Shapiro utterly failed to comply with FRCP Rule 26(a), resulting in prejudice to the defendants. Although the defendants were provided with a report written by Dr. Shapiro during the course of discovery, the defendants did not receive a disclosure that complied with Fed. R. Civ. P. 26(a)(2)(B). Specifically, the defendants did not receive a copy of Dr. Shapiro's CV, a list of his publications within the last ten years, a list of his testimony within the last four years, or a statement as to his rates. Additionally, there are no treatment notes or medical information that accompany this report. Moreover, the report does not relate to or mention this case in any respect. As such, Dr. Shapiro's report cannot "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Dr. Shapiro's report is addressed to "Hon. Robert Berliner, J.S.C." and was written in the

1133 Westchester Avenue | White Plains, NY 10604 | p 914.323.7000 | f 914.323.7001 | wilsonelser.com

Albany, NY | Atlanta, GA | Austin, TX | Baltimore, MD | Beaumont, TX | Birmingham, AL | Boston, MA | Charlotte, NC | Chicago, IL | Dallas, TX | Denver, CO
Detroit, MI | Edwardsville, IL | Madison, NJ | Garden City, NY | Hartford, CT | Houston, TX | Jackson, MS | Las Vegas, NV | London, England | Los Angeles, CA
Louisville, KY | McLean, VA | Merrillville, IN | Miami, FL | Milwaukee, WI | Nashville, TN | New Orleans, LA | New York, NY | Orlando, FL | Philadelphia, PA | Phoenix, AZ
Raleigh, NC | San Diego, CA | San Francisco, CA | Sarasota, FL | Seattle, WA | Stamford, CT | St. Louis, MO | Washington, DC | West Palm Beach, FL | White Plains, NY

278394088v.1

**WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

Druss v. Anthony Muscatella, et al.
Docket No.: 20-CV-006341 (PMH)
- 2 -

context of a different litigation. In his report, which postdates the incident giving rise to this lawsuit, Dr. Shapiro opines that Ms. Druss suffers from post-traumatic stress disorder ("PTSD") due *exclusively* to an involuntary hospitalization that occurred in 2016. Dr. Shapiro's report makes no mention of any of the events that occurred in 2019 and form the basis of this lawsuit. Despite the fact that this matter is not mentioned in Dr. Shapiro's report, we understand that plaintiff's counsel intends to elicit testimony from Dr. Shapiro that this incident exacerbated plaintiff's pre-existing PTSD condition. This testimony should not be permitted since it was never disclosed during the course of discovery in this matter and is prejudicial to the defendants.

Lastly, Dr. Shapiro's report also impermissibly relies on documents attached to the report which constitute hearsay. Fed. R. Evid. 703; *see also Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013). Dr. Shapiro's report includes and relies on affidavits from other lawsuits and emails from unknown individuals. These hearsay documents, which also make no mention of the events in 2019, further demonstrate the unreliability of Dr. Shapiro's report and the need to preclude his testimony.

Given that the plaintiff's disclosure of Dr. Shapiro did not comply with FRCP Rule 26(a), Dr. Shapiro's report contains no mention of this matter and impermissibly relies on hearsay, the defendants respectfully request that the Court issue an order precluding Dr. Shapiro from testifying at trial.

Respectfully submitted,

Wilson, Elser, Moskowitz, Edelman & Dicker LLP

By: _____
John M. Flannery, Esq.
Benjamin Sonnenfeldt, Esq.
Attorneys for Defendants
1133 Westchester Avenue
White Plains, NY
Tel: (914) 872-7111
E-mail: John.Flannery@wilsonelser.com

CC: Anthony Giordano, Esq. via ECF

278394088v.1

# Exhibit A

**Dr. Ralph Shapiro, Ph.D.**
*NPI#1942365341*
*P- 914-907-7613*

**Certified OASAS DMV Substance Abuse Evaluator**        **Bilingual (English/Spanish)**
**Licensed Clinical Psychologist**                         **Certified Psychoanalyst**

October 28, 2020

Hon. Robert Berliner, J.S.C.

Mr. Anthony Giordano, Esq.
Giordano@optonline.net

**RE: Ms. Stacey Druss**
**DOB: 4/27/62**

**DIAGNOSIS**
Posttraumatic Stress Disorder and Associated Symptoms
As per the DSM-5 Manual of Medical and Mental Disorders

Ms. Druss is a 58 year old divorced woman and the mother of three children ages 18, 28 and 31. She is the Plaintiff in an action seeking damages from an involuntary, severely traumatic, terrifying psychiatric hospitalization and medication administration at Nyack, NY Hospital from 11/22/16-12/5/16, this being the direct and sole cause of the disabling Posttraumatic Stress Disorder (PTSD)she continues to suffer from.

This evaluation consists of two parts:
1. A comprehensive mental health status and stability history of Ms. Druss
2. An assessment of the symptoms and effects of the Posttraumatic Stress Disorder Ms. Druss sustained directly from the terrifying, traumatic involuntary psychiatric inpatient hospitalization and medication administration at Nyack Hospital NY from 11/22/16 - 12/5/16.

My contact with Ms. Druss consisted of 15 personal and telehealth evaluation interviews.

My credentials to conduct evaluations include a Master's Degree and Ph.D. Degree in Clinical Psychology, Qualification as an Expert Witness in Psychology by the County Court of the State of N.Y., Supervisor of Clinical Psychology Interns and Practitioners, A degree and Certificate in The practice of Psychotherapy and Psychoanalysis, and 45+ years' experience in the diagnosis and treatment of substance abuse and mental disorders Including Posttraumatic Stress Disorder.

Further included in this evaluation are four collateral reports regarding Ms. Druss' mental health history and stability from 2 mental health professionals and two people who know firsthand her mental health stability history and are competent to comment upon it. (See Collateral Report Index at back of evaluation, particularly underlined sections).

### PART ONE

### MENTAL HEALTH HISTORY AND EVALUATION

Like a red thread running through a tapestry, Ms. Druss' pre-trauma mental health history is consistently defined by normality, health, and a wholesome stability. Her mother's pregnancy was full term and normal and Ms. Druss' birth was normal along all relevant parameters as well. She negotiated all milestones of child development well from infancy through adulthood and continues to negotiate adulthood in a competent, stable, intelligent, healthy manner. Thus, no signs of psychopathology or notable abnormalities are present throughout her history and very highly unlikely to become so at any future point in her adult development. This is largely attributable to the fact that she describes her family as stable and supportive---- and importantly---- she always felt secure growing up--- a reliable predictor and validator of mental health stability. Among her many stable traits is Ms. Druss' sense of empathy, crucial for creating understanding and affection in parenthood and other relationships--- and that capacity, combined with a quick intelligence and an interest in caring for others gave her the vital capacity to understand and meet her children's needs. It also enabled her to function successfully as an elementary school teacher, including teaching a family living class, sales manager of a local radio station, and a substance abuse counselor at Daytop Village Treatment Center. Thus, this history strongly negates and totally invalidates Nyack Hospital's misdiagnosed, undocumented depiction of Ms. Druss. (See Part 2 regarding Ms. Druss' wrongful, involuntary hospitalization including relevant underlined collateral material in the index).

Further, Ms. Druss presents in a consistently genuine and sincere manner: lucid, logical, most intelligent and articulate, expressing her thoughts and feelings simply and directly. Her manner has an authentic ring of truth to it that lends confidence to her reliable stability. She has a realistic sense about who she is and what she values and is aware of her interpersonal relationships and how she comes across to others. She is a stable woman who has her wits about her and knows what she is about and becoming more so as she continues to negotiate the issues and transitions of adulthood.

Thus, the constellation of factors comprising Ms. Druss' evaluation, interviews and collateral reports unequivocally portray and defines her as a well-adjusted child, adult and parent with no history of psychopathology, psychiatric hospitalizations or the need for psychiatric medication and lend very strong assurance that she will continue to remain so as she moves forward into adulthood.

Case 7-20-cv-06341-PMH Document 64 Filed 12/19/22 Page 6 of 15
Case 7:20-cv-06341-PMH Document 63 Filed in NYSD on 12/19/2022 Page 6 of 15

3

## PART TWO

## INVOLUNTARY WRONGFUL HOSPITALIZATION AND MEDICATION OF MS. DRUSS AS THE DIRECT CAUSE OF THE ONSET OF POSTTRAUMATIC STRESS DISORDER

The freedom and right to make decisions for ourselves, to control what happens to us and what doesn't, to protect our minds and bodies from violent assaults and terrifying intrusions is to control our safety and security as individuals and citizens. It is the cornerstone of our being human, the essential core of our psychological and physical freedom and integrity without which we lose our Humanity …… and it is the cruel, brutal purpose of involuntary hospitalizations and related confinements to undermine these aspects of our humanity and psychological integrity.

On or about 11/22/16 Ms. Druss' human rights and integrity were severely and terrifyingly violated when a mobile response unit was dispatched from a call from the Rabbi of her synagogue to her home. No mention was made by the unit regarding the purpose of the call except to interview her, nor their intentions. She became very frightened and confused, insisted she was not harmful to herself or anyone else, but still no understanding or further discussion or response from the unit. She became terrified and---- to try to pacify the unit ---- answered their "evaluation" questions. (see underlined parts of #1 collateral data), but----like a horror story in real time----The situation escalated, an ambulance and the police arrived, Ms. Druss was forcibly strapped to a Gurney -----her terrified pleas ignored -----and taken to Nyack NY hospital where she was involuntarily held and medicated from 11/22/16- 12/5/16.

Further abuse and disrespect of Ms. Druss' dignity, integrity and sense of safety and security are the false, undocumented hospital records of her history, wrongfully stating diagnoses of "Acute Psychosis, Delusional, Paranoid, Grandiose, Bipolar". Also falsely recorded on hospital notes is a court document stating Ms. Druss had a history of multiple hospitalizations around mental illness and multiple medications for such. To quote Ms. Druss: "I was never a patient in a psychiatric hospital nor referred for psychiatric medication…". This falsification of records assaulted her sense of esteem, competence and sense of stability and safety as well as the pattern of symptoms here described which she continues to suffer from.

Since her terrifying, involuntary hospitalization Ms. Druss has been suffering from the diagnosis of Posttraumatic Stress Disorder (PTSD) constituting a constellation of many painful, tenacious disruptions of her daily living and functioning as follows.

## MENTAL AND EMOTIONAL FUNCTIONING

1. Dread, terror and intense fear of involuntary hospitalization and medication.
2. Mistrust and fear of doctors and all associated hospital and medical personnel.
3. Dread of mobile help units and all associated personnel
4. Fear of any kind of unwanted touch.
5. Suspicion of what doctors and associated personnel intend and what they will tell her.

Case 7-20-cv-06341-PMH Document 64 Filed 12/19/22 Page 7 of 15
Case 7:20-cv-06341-PMH Document 63 Filed in NYSD on 12/19/2022 Page 7 of 15

4

6. Fear of police violence.
7. Persistent anxiety, depression, fear, sadness.
8. Fear of isolated places.
9. Fear of leaving home.
10. Fear of being alone "I can't get it out of my mind".

### THINKING AND PERCEPTION

1. Repetitive, disturbing thoughts about the incident.
2. Intrusive flashbacks to the incident are very upsetting and frightening.
3. Hypervigilance of my surroundings and fear of intruders.
4. Hyper startle response to cues regarding the incident (movies, kidnappings, newspaper stories).
5. Suspicion of strangers.
6. Loss of experiencing positive feelings or showing them.

### SOCIAL AND INTERPERSONAL RELATIONS

1. My social life has been cut short due to these problems. I see fewer people and fewer people contact me.
2. Continual loneliness and sadness.
3. Suspicion of casual strangers.
4. Loss of ability to do things I like... reading, writing, etc.
5. I feel unsafe and unprotected and vulnerable.
6. I feel humiliated and abused and try to avoid seeing people who know the situation.
7. I am stressed about my relationship with my 18-year-old son. There is tension now since I was hospitalised and not there for him. I'm upset about this.

### VOCATIONAL CONCERNS

1. I have lost confidence and am unsure of how I can negotiate the stress and demands of a job.
2. My concentration and attention are weaker and are stressful to maintain.
3. How will I support myself in the future? I feel lost and confused about it.
4. Stress derails me and interferes with possible goals -----very hard to cope with stress.

### PHYSICAL FUNCTIONING

1. Will I recover?
2. How long will I have to cope with it?
3. Does the future bring new symptoms and problems?
4. Will I ever feel whole and myself again?

5

PTSD has no "cure" such as an antibiotic for infection or surgery for a broken hip. Because it is a trauma which intrudes upon multiple aspects of your daily vital functioning----mental, emotional, cognitive, perceptual, physical, social, financially vocational-----it takes continual drawing upon your inner resources-----determination, patience, pain tolerance, self-awareness and more-----to make the life changes, adaptations, and compromises to best cope with the trauma.

Thus, the PTSD Ms. Druss continues to suffer from have etched an imprint across myriad vital aspects of her life as described above. By understanding the nature of this disorder and drawing upon her own resources and/or others she feels useful, her goal is to reclaim many of the healthy aspects of the person she had known prior to this most painful -----and unnecessary ---- incident.

6

# INDEX

Nov 05 20 03:04p
Case 7:20-cv-06341-PMH Document 64 Filed 12/19/22 Page 10 of 15
Case 7:20-cv-06341-PMH Document 63 Filed in NYSD on 12/19/2022 Page 10 of 15

STATE OF NEW YORK

CIVIL COURT OF COUNTY OF ROCKLAND

---

STACEY DRUSS,

    Plaintiff,

v.

MONTEFIORE NYACK HOSPITAL;
MARK A. SCHER, MD; MICHAEL I.
LEVY, MD; JOSEPH A. VITTORIO, MD;
NANCY C. MAGLIOCCA, RN; NINA
ALMOND, LMSW; ROCKLAND MOBILE
CARE; JOHN and JANE DOES 1-100,

    Defendant(s).

INDEX NO.: 2018-000709

---

## AFFIDAVIT OF MERIT

1. I, Debra Haverson, am a state-licensed, board-certified social worker in the state of New Jersey, and prior, was licensed to practice social work in Maryland, where I lived previously. I earned a Master's in Social Work from the University of Maryland in Baltimore and worked with children and teens considered to have emotional difficulties in the Kennedy Krieger Institute's (KKI) Therapeutic Foster Care program until 2011. Simultaneously, I also had a part-time psychotherapy practice working with adults and children in Maryland for 2 years. In 2011, having relocated to New Jersey, I began my private psychotherapy practice in Madison, NJ, working with children and adults, including elderly patients with dementia. In these roles, I have worked with clients who sometimes required restrictions or hospitalization when they became a risk to themselves or others. I frequently, while at KKI, participated in the Emergency Petition Process with staff psychiatrists or, as the social worker on-call overnight and weekends and took clients to the local hospital emergency rooms for evaluation and admission. On many occasions, I followed up with their care during and after they were released.
1. I have reviewed the records associated with the Defendants in this matter including: Certificates of Examining Physicians; a Supreme Court of the State of New York, County of Rockland Affidavit in Support of Application to Treat Over Objection; Interdisciplinary Treatment Plan Reviews, a Psychosocial Assessment completed 11/29/16 and discharge instructions.
2. I have evaluated the Plaintiff in the matter. I met with the Plaintiff on August 27, 2018 in my office, during which she detailed the story about how a team of emergency mental health professionals visited her home the evening of November 22, 2016 and called in EMT staff and police and took her to Nyack Hospital. This was my first and only meeting with Ms. Druss, and – at that time – I found her to be emotionally stable and capable of self-

Nov 05 20 03:04p                                                                                                    p.2
Case 7-20-cv-06341-PMH    Document 65    Filed in NYSD on 12/19/2022    Page 11 of 15
Case 7:20-cv-06341-PMH   Document 64   Filed 12/19/22   Page 11 of 15

**Debra A. Haverson, MSW, LCSW**
NJ License #44SC05474700

**Debra Haverson Psychotherapy Services, LLC**
P.O. Box 416
Madison, NJ 07940
973-476-4503

This report provides further clarification of the Affidavit of Merit. It is my opinion as a mental health profession who has frequently worked with clients who require hospitalization to protect their safety or that of others, that the hospital documentation does not support the need for Stacey Druss's (admitted as Stacey Kaufman) 13-day involuntary inpatient psychiatric stay with any specific, fact-based reports of problematic or dangerous behavior. Additionally, I note a significant inconsistency related to discharge: although Nyack Hospital's documentation indicates that the patient was noncompliant with recommended inpatient treatment, she was discharged without any specific plan for follow-up mental health treatment and, therefore, was likely deemed of no danger to self or others.

The following are my observations of the documentation of this hospitalization:

1. The Emergency Room report does not reflect that the patient was given a shot of medication by an EMT although she states that she agreed to go for evaluation voluntarily. There is no evidence about what this medication or consideration that it may have altered her presentation upon arrival at the hospital.
2. There appears no consideration for the impact of being taken suddenly from one's home by ambulance to the hospital for an emergency psychiatric evaluation and resulting hospitalization. This event would be likely to produce a panicked, agitated state in most people. Reports of being manic and delusional do not state any specifics other than her being very talkative, a behavior consistent with panic.
3. Although the court document states that she has a prior history of mental health issues and hospitalizations, there is no documentation of dates and institutions at which this occurred. This is inconsistent with another document, the Psychosocial Evaluation, which indicates no such history. The patient states that she had never been hospitalized for mental illness, except for this event.
4. There are no specific and/or documented reports of self-harm; suicidal ideation; intentions of harm or threats to others prior to or during hospitalization.
5. The patient's refusal to take multiple antipsychotic and anti-anxiety medications seems to be the primary evidence of her denial of mental health problems and delusions rather than being interpreted as self-protection and self-determination. The only other evidence of her lack of cooperation is documentation that she was "disruptive during groups 75% of the time;" however, there are no specific details about what constitutes disruptive behavior.
6. Despite noncompliance with medication, she was deemed stable to return home with only very general discharge planning. Admittance to a Partial Hospitalization, Intensive Outpatient and confirmed scheduled visits with a therapist or professional for medication management were not a condition at discharge.

*Debra Haverson, MSW, LCSW*      9/5/2018
DEBRA HAVERSON, MSW, LCSW        Date

regulation while recounting the details of an involuntary hospital stay that lasted until December 5, 2016. She has a lively and talkative personality and frequently makes jokes and sarcastic remarks. As with many people who tell me their history at an initial Diagnostic Interview, the conversation tended to bring in many stories related to her life, often appropriately, in response to my questions. She can be very blunt and demonstrates the ability to be logical and fair in her recounting of events. She appears to have insight into her own behaviors and personality. She also provided background about the divorce process that occurred prior to that event, her activity at the time with online feminist advocacy, and other personal events. I have also spoken with Dr. Peter Kaplan, Psy.D., who saw Ms. Druss and her ex-husband for marriage counseling in 2015 then later provided brief outpatient therapy in early to mid-2017 to address the client's traumatic memories related to the hospitalization. This discussion confirmed my impressions of the client's emotional stability in that during both periods of time, he observed no indication of the need for more intensive mental health intervention.

3. Based on my review of these medical records and my experience in working with individuals who have required hospitalization, it is my opinion that the care rendered to Stacey Druss (as Stacey Kaufman) from November 22 to December 5, 2016 at Nyack Hospital and by doctors working at this institution departed from the applicable standard of care in that an inpatient stay of 13 days appears to have been unnecessary and excessive based on the documentation of her condition. Although the documents state she is "a woman with acute psychosis who is grandiose, delusional," "has poor judgement," and "places herself in dangerous situations," there are *no specific or measurable details supporting these evaluations*. The National Institute of Mental Health (NIMH) defines psychosis as being used to describe conditions that affect the mind, where there has been some loss of contact with reality. here are no examples of how this manifested in Ms. Druss's speech or behavior either in public or while hospitalized. The doctors prescribed five psychiatric medications, which the claimant refused to take, and this is given as the primary support for stating that she has delusions and denial about her own mental status.

4. My opinion is expressed with a reasonable degree of probability.

5. Attached is a report that expresses my opinion in more detail.

*Debra Haverson*, MSW, LCSW
DEBRA HAVERSON, MSW, LCSW
NJ License #44SC05474700
19 GREEN AVENUE
MADISON, NEW JERSEY 07940
PHONE: 973-476-4503

Dated: September 6, 2018

Nov 05 20 03:04p  p.4
Case 7-20-cv-06341-PMH   Document 65   Filed in NYSD on 12/19/2022   Page 13 of 15
Case 7-20-cv-06341-PMH   Document 64   Filed 12/19/2022   Page 13 of 15

**From:** Buchanan, Dwayne
**Sent:** Friday, September 11, 2020 11:44 AM
**To:** dr.shapiro.ralph@gmail.com
**Subject:** Stacey Cara Druss

Dr. Shapiro,

Stacey and I met in 1984 and we married in 1986. I was in the planning department of a major medical equipment manufacturer when she began as an intern in purchasing.

We planned and in 1989 Ryan was born then Leah in 1992, they grew to be intelligent and both on smart paths with their careers all in thanks to her involvement, brilliance and dedication to parenting and family.

She has proven to me and many people we know to be a great wife and mom. I have always, knowing Stacey for 36 years, found her to be a logical thinker with sound judgements. She has always shown adaptability in uncomfortable situations, been very well adjusted and certainly a mentally stable person.

[x] The linked image cannot be displayed. The file may have been moved, renamed, or deleted. Verify that the link points to the correct file and location.

# Dwayne Buchanan

HOME CONSULTANT

Phone:   540.992.4509
Mobile:  914.419.3718
Email:   dwayne.buchanan@claytonhomes.com
Website: www.claytonhomesroanoke.com
Address: Clayton Homes, 1395 Lee Highway,
         Roanoke VA 24019

CONFIDENTIALITY NOTICE
This message and the accompanying documents contain information that belongs to the sender and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If the reader of this e-mail is not the intended recipient, you are hereby notified that you are strictly prohibited from reading, disseminating, distributing, copying, or taking action in reliance on the content of this communication. If you have received this e-mail in error, please notify the sender immediately and destroy the original transmission. Thank you.

Nov 05 20, 03:05p  SHAPIRO  9785944687  p.5
Case 7-20-cv-06341-PMH  Document 64  Filed 12/19/22  Page 14 of 15
Case 7-20-cv-06341-PMH  Document 63  Filed in NYSD on 12/19/2022  Page 14 of 15

# Dr. Peter A. Kaplan
## Psychologist
### 62 Rocky Hill Road New Paltz NY 12561

NY State License 011288
DrPeterKaplan.com

845.527.6289 P
845.255.1440 F

9/21/20

Dear Dr. Shapiro,

This statement is in response to your request for a brief clinical opinion of the general mental status of Ms. Stacey Druss, who you are evaluating, during the period I treated her for both marital and individual psychotherapy intermittently between February 2015 and May 2017. It is written with the express consent and permission of Ms. Druss.

Ms. Druss presented with anxiety and depression during this period secondary to marital distress (the marriage eventually ended in divorce). As far as I remember, there was no overt significant psychopathology other than the anxiety and depression. She did not exhibit any overt psychotic symptoms. Her day to day functioning, as I recall, was not significantly impaired by her distress. She did not display any symptoms, as I remember, that led me at the time to consider a higher level of care than traditional outpatient psychotherapy.

I do hope this helps in your assessment.

Sincerely,

Peter Kaplan, Psy.D.
Psychologist

Nov 05 20, 03:05p        SHAPIRO                9785944687              p.6
Case 7-20-cv-06341-PMH    Document 64    Filed 12/19/22   Page 15 of 15
Case 7:20-cv-06341-PMH   Document 65   Filed in NYSD on 12/19/2022   Page 15 of 15

**From:** Vines
**Sent:** Friday, September 11, 2020 12:21 PM
**To:** dr.shapiro.ralph@gmail.com
**Subject:** Stacey Druss

I have know Stacey Druss for several years. I consider her a wonderful friend. She is honest, supportive and a good listener. She is highly intelligent and well-spoken. I have no doubt she is of solid character and is 100% trustworthy. Stacey has always been a stable and well-adjusted woman. She is level-headed, clear thinking and reasonable. I saw this side of her when we worked together on a literary project. I would say she knows herself well and is very self-aware.

Deborah

Deborah A. Vines
845/893-9648
dav4ny@optonline.net
www.deborahvines.com
www.deborahvines.net

Sent from my iPhone



Deborah Vines
E: dav4ny@optonline.net
C: 845.893.9648
www.deborahvines.com
www.deborahvines.net